1  GORDON M. COWAN, Esq.
   SBN# 1781
2  Law Office of Gordon M. Cowan
   10775 Double R Blvd
3  Reno, Nevada  89521 USA
   Telephone 775.786.6111
4
5  Attorney for Intervenor Defendant
   Applicant, LAURA LEIGH
6
   ## IN THE UNITED STATES DISTRICT COURT
   ## DISTRICT OF NEVADA
7
8  NEVADA ASS'N. OF COUNTIES;
   NEVADA FARM BUREAU FEDERATION;
9
                    Plaintiffs,          **Case No.  3:13-cv-00712-MMD-WGC**
            vs.
10
11 U.S. DEPT. OF THE  INTERIOR;
   SALLY JEWELL;
   BUREAU OF LAND MANAGEMENT;
12
13               Defendants.
   _____/
14 LAURA LEIGH,
                 Intervenor Defendant
15                          Applicant
   _____/
16
                   **MOTION TO INTERVENE**
17

18     LAURA LEIGH, an Intervenor Defendant applicant, moves to intervene in the above-

19 captioned matter as a matter of right and permissively. This motion is made per

20 Fed.R.Civ.P. 24 and is based on the Memorandum of Points and Authorities,

21 declaration(s), exhibits / documents accompanying this motion or referenced herein if

22 not otherwise attached, and on such additional matters as may come before the court.

23     Respectfully, January 26, 2014

24                              LAW OFFICE OF GORDON M. COWAN

25                                  *s/  G.M. Cowan*

26                              _____
                               Gordon M. Cowan Esq. (SBN 1781)
27                              Attorney for LAURA LEIGH,
                               Intervenor Defendant Applicant

28

Cowan Law Office
10775 Double R Blvd
Reno, NV 89521
© G.M. Cowan 2014
All Rights Reserved
www.cowanlaw.com

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE

3      LAURA LEIGH, applicant Defendant Intervenor, submits the following Memorandum

4  of Points and Authorities in support of her Motion to Intervene:

5                                    **BACKGROUND**

6      Ms. Leigh finds herself challenged on two fronts with this suit, one from the plaintiffs

7  who seek to eradicate wild horses from the range to maximize their members'

8  subsidized interests on public lands and which compromises Ms. Leigh's aesthetic and

9  other interests to view those wild horses on public lands and to observe their

10  management. The other front comes from the BLM, an overworked, understaffed and

11  budget-challenged agency that relies on flawed data, analyses, conclusions and

12  methods to remove wild horses from those same BLM lands in Nevada, contrary to the

13  purposes underlying the Wild Horse Act (cited and discussed below) and which also

14  results in action contrary to Ms. Leigh's aesthetic enjoyment of observing,

15  photographing and studying wild horses on the range. No existing party to the suit

16  protects Ms. Leigh's substantial interests or those like her, who appreciate and enjoy

17  observing these aesthetic, gratifying creatures roaming free on public rangelands.

18

19  ***NACO's Requested Relief***

20      The plaintiffs, Nevada Association of Counties ("NACO")[1]  and Nevada Farm Bureau

21  Federation ("Farm Bureau") (collectively, "NACO") brought suit against the defendants,

22  U.S. Department of the Interior, Ms. Sally Jewell and the Bureau of Land Management

23  (collectively, "BLM"), programmatically challenging their management of wild horses

24  _____

25      [1]  The "Nevada Association of Counties" is nowhere found as a viable business
26  entity with the Nevada Secretary of State's Office ("Secretary"), nor does there appear
    to be a state business license issued to the "Nevada Association of Counties," at least
27  according to the Secretary. See, e.g., http://nvsos.gov/sosentitysearch/  or call the
    Secretary's customer service representative for confirmation at their listed phone
28  number, 775.684.5708. See also, Declaration of Gordon M. Cowan, Exhibit 3 attached.

*Cowan Law Office*
*10775 Double R Blvd*
*Reno, NV 89521*
*© G.M. Cowan 2014*
*All Rights Reserved*
*www.cowanlaw.com*

Page 2

located on or contiguous to BLM public lands within the State of Nevada.[2]

NACO seeks the removal of wild horses from Nevada BLM ranges, citing and relying on the Wild Free-Roaming Horses and Burros Act of 1971 ("Wild Horse Act"), 16 U.S.C. § 1331 et seq. But the Wild Horse Act decries the very action and result NACO seeks to accomplish where the Wild Horse Act proclaims that, "wild free-roaming horses and burros shall be protected from capture, branding, harassment,[and] death ..." and shall "be considered in the area where presently found, as an integral part of the natural system of the public lands." *Id.* And NACO's requested relief ignores the Wild Horse Act's preamble which further proclaims that, "wild free-roaming horses and burros are living symbols of the historic and pioneer spirit of the West ... they contribute to the diversity of life forms within the Nation and enrich the lives of the American people." *Id.*

NACO seeks broad, dangerous precedence contrary to these proclamations of the Wild Horse Act when requesting that the court,

1.    order the BLM to immediately conduct gathers of all wild horses "which exceed the currently established AMLs";[3]

2.    order the BLM to immediately remove wild horses both inside and outside of established HMAs";[4]

3.    order the BLM to "sell and otherwise properly dispose of such animals";[5]

---

[2]   Although unclear, NACO's complaint appears to also challenge the BLM at its national level, seeking relief not just in Nevada but in other states where BLM maintains management presence of wild horses under the Free-Roaming Wild Horses and Burros Act of 1971 ("Wild Horse Act"), cited later in this brief. See, e.g., court docket entry ("Dkt.") 1, ¶¶ 31(a), 33, 53, 60, 70, 79, and "prayer" at ¶ 92(c), all of which reference or imply a challenge to BLM wild horse "long-term enclosed pastures" or "long-term warehousing." On information and belief, no such facilities exist within the State of Nevada.

[3]  Dkt.1, ¶ 92(a).

[4]  *Id.*

[5]  Dkt.1, ¶ 92(c).

Cowan Law Office
10775 Double R Blvd
Reno, NV 89521
© G.M. Cowan 2014
All Rights Reserved
www.cowanlaw.com

4.     order BLM to conduct wild horse population studies every two months within all locales in Nevada managed by BLM;[6]

5.     establish an injunction and/or writ of mandamus "to establish a schedule by which Defendants must accomplish the above-described tasks...."; [7]

6.     accept NACO's tortured interpretation and forego appropriate analysis of the scientific study recently completed by the National Academy of Sciences that analyzes the BLM's wild horse management program;[8]

7.     accept broadly, BLM's current method of determining "appropriate management levels" of wild horse populations ("AML") in all herd management areas ("HMA")[9] statewide, to establish a basis for NACO's requested relief;

8.     accept BLM's determination of boundaries for HMAs within Nevada as being accurate and valid, for the purpose of establishing a basis for NACO's requested relief.

## STANDARD OF REVIEW

Denial of intervention as of right is reviewed *de novo* although the timeliness of the motion is usually reviewed for abuse of discretion. *Donnelly v. Glickman*, 159 F.3d 405,

---

[6]  Dkt.1, ¶ 92(b).

[7]  Dkt.1, ¶ 93.

[8]  The link to the National Academy of Sciences study, *Using Science to Improve the BLM Wild Horse and Burro Program: A Way Forward* (2013) is as follows: http://www.nap.edu/catalog.php?record_id=13511. The study consists of 451 pages. Much of the study is relevant to the BLM's determination of AML, HMA boundaries and the removal and warehousing of wild horses from Nevada BLM ranges, all of which would likely be part of this suit should it survive the court's scrutiny.

[9]  The term "herd management area" or "HMA" was adopted by the BLM following the 1974 amendment to the original Wild Free-Roaming Horses and Burros Act of 1971, 16 U.S.C. §1331 *et seq*. ("Wild Horse Act"). Prior to 1974 , rangelands where wild horses roamed were defined as "herd areas" or "HA"s.

Cowan Law Office
10775 Double R Blvd
Reno, NV 89521
© G.M. Cowan 2014
All Rights Reserved
www.cowanlaw.com

1  409 (9th Cir.1998); **[10]** *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir.

2  2001).

3      Denial of requested permissive intervention is reviewed for abuse of discretion. *See,*

4  *League of United Latin American Citizens ("LULAC") v. Wilson,* 131 F.3d 1297, 1307

5  (9th Cir.1997). If the district court's denial turns on a legal question its legal

6  determination is subject to *de novo* review. *San Jose Mercury News, Inc. v. U.S. Dist.*

7  *Court 0 Northern Dist. (San Jose)*, 187 F.3d 1096 (1999).

8

9                                      **DISCUSSION**

10  ***INTERVENTION AS OF RIGHT***

11      Fed.R.Civ.P. Rule 24(a) permits intervention when the following criteria are satisfied:

12  (1) the application for intervention must be timely; (2) the applicant must have a

13  "significantly protectable" interest relating to the property or transaction that is the

14  subject of the action; (3) the applicant must be so situated that the disposition of the

15  action may, as a practical matter, impair or impede the applicant's ability to protect that

16  interest; and (4) the applicant's interest must not be adequately represented by the

17  existing parties in the lawsuit. *Berg*, 268 F.3d at 817.

18      In general, the Court must construe Rule 24(a) liberally in favor of potential

19  intervenors. *Id.* at 818. Moreover, the Court's evaluation is "guided primarily by practical

20  considerations," not technical distinctions. *Id.* However, "[f]ailure to satisfy any one of

21  the requirements is fatal to the application." *Perry v. Prop. 8 Official Proponents*, 587

22  F.3d 947, 950 (9th Cir.2009).

23

24  ***First Factor - Timeliness***

25      Timeliness should not be a factor in this case. The BLM's response or answer to

26  _____

27      [10]  But see *League of United Latin American Citizens ("LULAC") v. Wilson,* 131

28  F.3d 1297, 1307 (9th Cir.1997) (curt district court order spurred *de novo* review and
reply.

*Cowan Law Office*
*10775 Double R Blvd*
*Reno, NV 89521*
*© G.M. Cowan 2014*
*All Rights Reserved*
*www.cowanlaw.com*

1   NACO's complaint is not due for some time. The matter remains in the earliest of the

2   pleading stage. No party has been prejudiced by a late-coming intervening party. The

3   Summons has yet to be returned and filed.

4

5   ***Second Factor - "significantly protectable" interest***

6   "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving

7   as many apparently concerned persons as is compatible with efficiency and due

8   process." *County of Fresno v Andrus*, 622 F.2d 436, 438 (9th Cir. 1980), quoting

9   *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).

10

11   <u>Ms. Leigh's Standing</u>

12   In litigation between Ms. Leigh and the BLM, the BLM does not usually challenge

13   Ms. Leigh's "standing" to bring suit.  It is not disputed she has attended more BLM

14   roundups than has any U.S. Department of Interior or BLM employee. Ms. Leigh has

15   traveled to HMAs in six different states including those in every BLM district in the State

16   of Nevada. She has spent the majority of her time on the ranges in Nevada. Her work is

17   well known.

18   Ms. Leigh is an award winning illustrator, journalist / videographer and report on

19   issues dealing with the American West.   Her published articles and video have

20   appeared in many venues including Horseback Magazine, KLAS-TV and CNN. Ms.

21   Leigh is President and founder of Wild Horse Education, a non-profit group devoted to

22   documenting, reporting to the public and advocating on issues involving wild horses no

23   public lands. See, www.wildhorseeducation.org.

24   Ms. Leigh has been a horse owner and keeper for many years.   Ms. Leigh is

25   informed and believes she is reasonably informed on many issues involving the care,

26   maintenance and safety of horses including but not limited to matters involving their

27   physiology, structure, hoof care, feed and diet, diseases, conditioning, handling, and

28   their natural instincts, to name but a few.  Ms. Leigh has personally given medical aid

*Cowan Law Office*
*10775 Double R Blvd*
*Reno, NV 89521*
*© G.M. Cowan 2014*
*All Rights Reserved*
*www.cowanlaw.com*

1   and attention to horses, treating such ailments or injuries involving, among other

2   conditions, leg injuries, digestive issues, colic, heat and hydration issues.  She has

3   taken care of foals with congenital anomalies.  She has treated and cared for horses

4   with metabolic and stress founder.   Ms. Leigh operated a home-based nursery for

5   wildlife rehab in conjunction with a county wildlife center where, during her tenure there,

6   the center maintained a zero percent death rate with over 100 orphans of varied

7   species of wildlife.

8      Ms. Leigh has attended more BLM roundups the past thirty (30) months than any

9   BLM, DOI or other government personnel, any journalist, any photojournalist, and any

10   other member of the public, in her attempts at accurately documenting wild horses in

11   the wild, and in documenting the BLM's management of wild horses.  In the past two

12   years Ms. Leigh filmed/recorded thousand of hours of video and has amassed more

13   than a hundred-thousand photos of wild horses on public lands.

14      Ms. Leigh traveled in excess of 200,000 miles since September 2010 to observe and

15   document wild horses and the BLM's management practices.  Ms. Leigh has thus far,

16   traveled in six states to accomplish this work, she visited and attempted to visit multiple

17   wild horse holding facilities operated or managed by the government. She attended

18   numerous Advisory Board meetings and also traveled to Denver, CO to participate in

19   what BLM referenced as a "workshop" toward "problem solving."  And, she attended

20   numerous meetings in BLM district offices, she attended RAC meetings ("RAC" is the

21   BLM acronym for Resource Advisory Council) whenever opportunity presents to provide

22   public comment.

23      Ms. Leigh has endured personal searches, vehicle and property searches, road

24   blocks, background checks, extreme temperatures from minus 10 degrees Fahrenheit

25   to over 100 degrees Fahrenheit, vehicle breakdowns in remote regions, all in attempts

26   at gaining access to view and observe and document wild horses on public lands and at

27   government wild horse facilities and during capture, corralling and transportation for

28   their removal from public lands.

Cowan Law Office
10775 Double R Blvd
Reno, NV 89521
© G.M. Cowan 2014
All Rights Reserved
www.cowanlaw.com

1   Ms. Leigh has endured death threats, discriminatory access, vandalism to her

2   personal property, significant wear and tear to her personal property, countless hours of

3   off-road travel and on-road travel, all in attempts at gaining access to view and observe

4   and document wild horses on public lands and at government wild horse facilities and

5   during capture for their removal from public lands.

6   When not in the field, Ms. Leigh is conducting research on a multitude of wild horse

7   related topics particularly those involving public lands and interests that compete with

8   wild horses; she arranges for adoptions of wild horses captured by the BLM from public

9   lands and is responsible for having caused the adoption of a significant percent of all

10   horses adopted out by the BLM; Ms. Leigh is a regular publisher of articles concerning

11   the management of wild horses on public lands.

12   Ms. Leigh's life is devoted to documentation and education of the care of wild horse

13   herds.  Ms. Leigh is dedicated to helping create reform where appearing necessary, in

14   the management of America's wild horses.

15   As a documentarian and photojournalist Ms. Leigh is dedicated to creating honest

16   dialogue based on the truth about wild horses and burros on public lands; her goal is to

17   educate the public about wild horses on public lands, including educating on how wild

18   horses live, thrive, survive, travel, their social order and interaction, how they become

19   impacted by competing private and also public interests that affect their remaining

20   habitat, how they are impacted by man and by those charged with the responsibility of

21   protecting them, who, in this instance, is the BLM.

22   As a documentarian and a current historian of America's wild horses, Ms. Leigh has

23   gained a deep appreciation of, and respect for, wild horses, not just for a particular

24   horse or two, nor in a general sense toward all wild horses, but rather, to certain groups

25   of horses, certain herds exhibiting genetic similarities within defined geographical

26   regions, and to certain herds of horses who thrive viably where the BLM has had little

27   involvement, and with specified groups or families of wild horses who thrive and interact

28   in a dynamic social order among themselves as particular herds in certain remote

Cowan Law Office
10775 Double R Blvd
Reno, NV 89521
© G.M. Cowan 2014
All Rights Reserved
www.cowanlaw.com

regions within public lands, and which Ms. Leigh photographed or documented multiple times in the past and also recently, and with whom Ms. Leigh spent countless hours and days visiting, watching, appreciating and understanding while observing them in their environment, on rangelands comprising public lands managed by the BLM in Nevada.

### *Ms. Leigh's aesthetic right to enjoy public lands and resources.*

Ms. Leigh maintains a legally protected right to enjoy public lands for their aesthetic and related values, including the enjoyment of seeing wild horses roam free on public lands and also to view them roaming free as symbolic figures representing the spirit of the American west in their public lands' habitats. Ms. Leigh also maintains interests in photographing the wild horses and in studying them for educational and documentary purposes.

Ms. Leigh's aesthetic  interests are implicit in the Wild Horse Act through the mentioned preambles. But the public and Ms. Leigh's interests along these lines are further enhanced by the Federal Land Policy Management Act, 43 U.S.C. § 1701 *et seq.* ("FLPMA"), specifically, § 1701(a)(7) and (8) which NACO chooses to ignore; and where, by example, lands are to be managed for "multiple use," *id*. § 1701(a)(7), with an increased emphasis on the management of the public lands "in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values." *Id*. § 1701(a)(8).[11]  See also,

_____

[11]  FLPMA defines "multiple use" in relevant part as:
[T]he management of the public lands and their various resource values so that they are utilized in ... a combination of balanced and diverse resource uses that takes into account the long-term needs of future generations for renewable and nonrenewable resources, including, but not limited to, recreation, range, timber, minerals, watershed, wildlife and fish, and natural scenic, scientific and historical values; and harmonious and coordinated management of the various resources without permanent impairment of the productivity of the land and the quality of the environment with consideration being given to the relative values of the

Cowan Law Office
10775 Double R Blvd
Reno, NV 89521
© G.M. Cowan 2014
All Rights Reserved
www.cowanlaw.com

1    *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 478 (9th Cir. 2011). Noteworthy

2    is that NACO discusses "multiple use" and discusses the Wild Horses Act as protecting

3    their members' interests. But NACO fails to recognize FLPMA altogether and glosses

4    over these important distinctions in these Acts that provide protection to the public to

5    appreciate and enjoy public lands for their aesthetic and recreational uses and values

6    as well, and that these public lands are not there for the exclusive use of subsidized

7    "cattle grazing."

8

9        <u>*Ms. Leigh's procedural right*</u>

10      Currently, Ms. Leigh maintains a suit in this very court challenging the BLM's

11    determination of "excess horses," of "AML" and she challenges the determination of

12    HMA boundaries within the Owyhee Complex, asserted by the BLM as bases to remove

13    wild horses within the Owyhee Complex. See, e.g., Dkt. 52-1, Second Amended

14    Complaint, in *Leigh v. Jewell*, Case 3:13-cv-0006-MMD-VPC (D. Nev.) (referenced

15    herein as the "Owyhee 2013 suit" or "Owyhee 2013")(See exhibit attached). The

16    Owyhee Complex is located in remote regions of the northeastern part of the state

17    within two BLM Districts.

18      Wild horses within the Owyhee Complex are necessary targets of the NACO suit

19    where NACO plaintiffs do not define any specific HMAs from where they would have

20    wild horses removed, and where they ask for wholesale and immediate removal of all

21    excess wild horses, wherever situated, even within and outside HMAs in Nevada.[12]

22      Incredibly, NACO accepts the soundness of the BLM's determinations of AML and

23    the *validity* of HMA boundaries on one hand, to broadly claim the BLM's wild horse

24    management program is flawed, on the other, when justifying their demand for the

25

26        resources and not necessarily to the combination of uses that will give the
      greatest economic return or the greatest unit output.

27                                                43 U.S.C. § 1702 (c).

28      [12]  See, e.g., Dkt.1, ¶ 92(a).

*Cowan Law Office*
*10775 Double R Blvd*
*Reno, NV 89521*
*© G.M. Cowan 2014*
*All Rights Reserved*
*www.cowanlaw.com*

1  wholesale removal of wild horses.

2      These very concepts, AML, HMA and boundary determinations for HMAs and their

3  validity, are at the very core of Ms. Leigh's challenge to the BLM in the Owyhee 2013

4  suit as they should be in NACO's suit based on NACO's requested relief.

5      Now, with the threat of NACO's sweeping requests for relief that includes a call to

6  the court to maintain jurisdiction and continuously monitor the expeditious removal of

7  wild horses, Ms. Leigh finds she must involve herself in this suit to protect her

8  procedural interest as outlined in the Owyhee 2013 suit. Because Ms. Leigh would

9  suffer irreparable harm to her interests on multiple fronts should NACO prevail in their

10  suit, where no party would look out for her interests. Ms. Leigh has no alternative but to

11  immerse herself in this suit.

12

13      _Ms. Leigh the photojournalist and her right to observe and report to the public_

14      Ms. Leigh is a photojournalist. She is a credentialed journalist with Horseback

15  Magazine. Ms. Leigh observes wild horses roaming free on public lands for the purpose

16  of reporting what she observes to members of the public who remain interested in what

17  transpires with wild horses and how they live and thrive in remote regions and how they

18  are managed by agencies such as the BLM, but who cannot otherwise travel to observe

19  the wild horses firsthand because of the travel distance and the remoteness of locations

20  where wild horses are found. Ms. Leigh observes on the public's behalf. When allowed,

21  Ms. Leigh observes and reports on the interaction between BLM and wild horses when

22  the BLM removes them. She reports what she sees to the interested public in the form

23  of photos and articles published in multiple print, audio and video media. The

24  information gathered by Ms. Leigh is utilized by the public to advocate for their interests

25  on public lands.

26      The past several years Ms. Leigh has written countless stories on wild horses and

27  has attempted to view and photograph the interaction between wild horses and BLM

28  representatives when the BLM chooses to remove wild horses from Nevada ranges.

Cowan Law Office
10775 Double R Blvd
Reno, NV 89521
© G.M. Cowan 2014
All Rights Reserved
www.cowanlaw.com

She spends the bulk of her time on BLM federal lands in Nevada for these legitimate purposes.

Ms. Leigh maintains a right under the First Amendment to the U.S. Constitution, to observe and report to the public, her observation and comment on how a government agency manages its public lands particularly where wild horses are subject of removal and storage. Ms. Leigh has a right to report her observations to the public.

The NACO suit interferes with this right where the wholesale removal of wild horses from the range is NACO's desired result. This would leave Ms. Leigh with little, if anything, on which to report should the horses disappear.

*Ms. Leigh's Work - As Educator of Wild Horses*

Ms. Leigh provides a benefit to society in providing educational opportunity and resources to those interested in the management and protection of wild horse herds on federal public lands. Ms. Leigh and her organization provide information on wild horses and burros themselves and also on the process of engaging procedural public involvement for the protection of wild horses and burros.

Protecting wild horses and burros on the range and in holding facilities is of significant public interest. The Wild Horse Act was passed unanimously by both houses of Congress after public outpouring of support. Just one of Ms. Leigh's videos has received nearly 3.5 million views. Protecting wild horses and burros on public lands is protecting a significant public interest.

**Third Factor - NACO suit impairs or impedes  Ms. Leigh's interests**

Ms. Leigh would be substantially and detrimentally affected in a practical sense, by a determination made in NACO's favor in this action, or by settlement or consent decree that results in a friendly "truce" for the removal of wild horses from the range. Ms. Leigh would also suffer irreparable harm if the wild horses were removed from public lands in derogation of the intent and policy underling the Wild Horse Act, or if they were

Cowan Law Office
10775 Double R Blvd
Reno, NV 89521
© G.M. Cowan 2014
All Rights Reserved
www.cowanlaw.com

1    removed in wholesale form from public lands as is the apparent goal of the NACO suit.

2        One of Ms. Leigh's primary purposes in visiting public lands is to observe and report

3    to the public, stories on wild horse on the range. But she could no longer observe and

4    report such stories if these wild horses were no longer present on the range which is a

5    potential eventuality stemming from the NACO suit. Or, more dangerously, absent Ms.

6    Leigh's involvement, the BLM could potentially capitulate to NACO's desires with a

7    settlement or consent decree that results in the "friendly" wholesale removal of such

8    horses from public ranges. The threats from these potential results interfere with Ms.

9    Leigh's legitimate interests in reporting and observing a government activity, occurring

10   on public land, managing a public resource. The NACO suit threatens Ms. Leigh's

11   ability to observe and report to others, as a photojournalist and journalist, on issues

12   pertaining to wild horses as they roam free on public lands.

13       The threatened result of the NACO suit likewise interferes with Ms. Leigh's legitimate

14   interest in the aesthetic enjoyment of appreciating wild horses roaming free on the

15   range and in studying them, photographing them and observing them for her self-

16   gratification. The threatened result of the NACO suit interferes with Ms. Leigh's

17   legitimate expectation from the Wild Horse Act that wild horses are to be protected from

18   "capture, branding, harassment, [and] death,"[13] and that they should be protected from

19   being "zeroed out" or lessened in population below their genetic viability as a herd, and

20   that they would not be sent to slaughter, or unnecessarily rounded up, or unnecessarily

21   handled and *never* inhumanely treated.

22       Ms. Leigh is informed and believes that these, too, are the parallel legitimate

23   expectations of the public and also of Congress where appropriations for spending

24   government funds on BLM managed lands specifically *prohibits* the use or availability of

25   such public funds for, "the destruction of healthy, unadopted, wild horses and burros in

26   the care of the [BLM] or its contractors or for the sale of wild horses and burros that

27

28          [13]  From Wild Horse Act preamble, 16 U.S.C. § 1331.

Cowan Law Office
10775 Double R Blvd
Reno, NV 89521
© G.M. Cowan 2014
All Rights Reserved
www.cowanlaw.com

1  results in their destruction for processing into commercial products."[14] The NACO suit

2  specifically seeks relief in direct contravention to this congressional expectation.

3      The threatened result of the NACO suit also interferes with Ms. Leigh's Owyhee

4  2013 suit. NACO's prevailing, whether via settlement, consent decree or with favorable

5  court rulings, would mean that NACO would have been successful in causing the court

6  and/or parties to accept as valid, the *invalidly*-based concepts of AML and HMA

7  boundary designations which the BLM uses to manage wild horses. These invalid

8  concepts are already the subject of challenge, brought to the court in Ms. Leigh's

9  Owyhee 2013 suit, but now being used as "valid" concepts in NACO's quest to remove

10  wild horses. Ms. Leigh would not have the opportunity to prove these challenges and

11  the invalidity of these concepts in her own Owyhee 2013 suit or in this suit absent her

12  inclusion herein, if the NACO suit prevails or causes a settlement that incorporates

13  these invalid concepts. Ms. Leigh's procedural process in having brought the Owyhee

14  2013 suit in the first instance would have been for naught, thus depriving Ms. Leigh of

15  due process *vis-a-vis* a denial of her right to defend against action that causes her

16  harm, the result of which would contravene a constitutional Fifth Amendment protection.

17      The threatened result of the NACO suit also interferes with Ms. Leigh's providing

18  educational opportunities for others to learn of wild horses and their habitat on public

19  land range. NACO's desired result or a settlement or consent decree, absent Ms.

20  Leigh's involvement, would destroy the belief that truthful engagement of process in

21  America is effective, a concept at the core of the educational activities Ms. Leigh

22  supports and conducts as part of Wild Horse Education.

23      NACO's prevailing would effectively interfere with Ms. Leigh's many activities and

24  stifle the public interest of fair and truthful management of wild horses and burros on

25  public lands.

26

27  _____

28      [14]  See, p.8, Exhibit 4 attached, Department of the Interior, Environment, and Related Agencies Appropriations Act, 2014.

*Cowan Law Office*
*10775 Double R Blvd*
*Reno, NV 89521*
*© G.M. Cowan 2014*
*All Rights Reserved*
*www.cowanlaw.com*

1   Rule 24(a)(2) does not require an intervenor applicant to suffer the denial of a

2   specific legal or equitable interest. *Blake v. Pallan*, 554 F.2d 947, 952 (9th Cir. 1977);

3   Johnson v. *San Francisco Unified School District*, 500 F.2d 349, 352-53 (9th Cir. 1974);

4   *Fresno Cnty. v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980).

5

6   ***Fourth Factor - adequate representation***

7   No party to the NACO suit adequately represents the interests of Ms. Leigh. NACO's

8   attempt to remove statewide, wild horses from public lands is antithetical to Ms. Leigh's

9   notions that wild horses should be managed such that they remain as viable herds on

10  public lands. There is clear conflict between what NACO desires from this suit and what

11  Ms. Leigh represents and for which the Wild Horse Act stands.

12  NACO is likewise not motivated to protect Ms. Leigh's constitutional right of access

13  to observe and report activity which involves wild horses on public lands and in holding

14  facilities. NACO is instead, interested in removing wild horses and having them

15  destroyed or sold for slaughter, which necessarily removes Ms. Leigh's observations

16  and ability to report and advocate for fair management of wild horses and burros.

17  NACO has no recognition or interest in protecting Ms. Leigh's right of enjoying the

18  aesthetic nature of observing wild horses run free on the range, or in the peace of mind

19  of having horses properly managed or kept without threat of slaughter in BLM holding

20  facilities. NACO desires to eradicate the wild horses to further subsidize livestock

21  grazing by its members.

22  The BLM would not adequately represent the interests of Ms. Leigh where the BLM

23  continues to rely on flawed or outdated data to determine AMLs and HMA boundaries,

24  contrary to concepts outlined in the suit Ms. Leigh maintains currently against the BLM,

25  the Owyhee 2013 suit. The BLM and Ms. Leigh are at odds in philosophy with how

26  horses should be handled and managed on many but not all Nevada public land

27  ranges. Much of these disagreements are documented in suits brought in this court, the

28  Owyhee 2013 suit remaining the current example.

*Cowan Law Office*
*10775 Double R Blvd*
*Reno, NV 89521*
*© G.M. Cowan 2014*
*All Rights Reserved*
*www.cowanlaw.com*

1    The BLM clearly employs its most strenuous efforts to keep Ms. Leigh afar from their

2    activities when managing and handling wild horses they remove from BLM lands which,

3    of course, is antithetical to Ms. Leigh's right of access and freedom to observe and

4    report on government activity.

5    Ms. Leigh has engaged the BLM toward creating fair and equitable management of

6    wild horses and burros for years. Of primary discussion is the inaccuracies of AML, of

7    boundary lines and of equitable forage allocations. BLM is highly unlikely to represent

8    or protect Ms. Leigh's interest in these matters.

9    No current party to the NACO suit would likely make arguments on behalf of Ms.

10   Leigh. No party expresses interest in bringing forward Ms. Leigh's positions and

11   arguments on any of the wild horse issues present in this case.

12   Ms. Leigh offers a unique and necessary element to the NACO suit with her

13   participation. Again, within the past three years Ms. Leigh has been to more wild horse

14   roundups than has any BLM employee or that of any member of the plaintiffs or of the

15   pubic. In the past three years Ms. Leigh gained more "boots on the ground" personal

16   observation and first-hand experience of Nevada public lands where wild horses roam

17   on ranges than has any other individual. Ms. Leigh has extensive observation and

18   research into BLM holding facilities and activities. She records visually, mentally and

19   photographically, first-hand, her extensive observations. Resultantly, Ms. Leigh

20   maintains a wealth of knowledge from a unique, hands-on perspective, and her

21   interests bear directly to subjects raised by the NACO suit.  Ms. Leigh's first-hand

22   knowledge also extends to the only site specific instance that NACO references in its

23   suit, the "Diamond Complex."

24   The court in *Berg* indicates a district court should consider, (1) whether the interest

25   of a present party is such that it will undoubtedly make all the intervenor's arguments,

26   (2) whether the present party is capable and willing to make such arguments and (3)

27   whether the would-be intervenor would offer any necessary elements to the

28   proceedings that other parties would neglect. *Berg*, 268 F.3d at 822. These factors,

Cowan Law Office
10775 Double R Blvd
Reno, NV 89521
© G.M. Cowan 2014
All Rights Reserved
www.cowanlaw.com

discussed above, weigh heavily toward finding that Ms. Leigh's interests in the NACO suit are not adequately, if at all, represented by the current parties. Ms. Leigh seeks to preserve public rangelands to include viable wild horse herds whereas neither the plaintiffs nor defendants in the case hold that desire.

Perhaps the greatest danger to Ms. Leigh, absent her inclusion in the case, would be if the BLM capitulated to some or all of NACO's interests in a form of a settlement or consent decree. NACO and the BLM share the common philosophy that horses should be removed in favor of private interests. Ms. Leigh would be denied protection against such a settlement or the effects thereafter should the parties conclude the matter with a settlement or consent decree that causes horses to be removed.

The prospective intervenor bears the burden of demonstrating that the existing parties may not adequately represent its interest. *Id*. However, the burden of showing inadequacy is "minimal," and the applicant need only show that representation of its interests by existing parties "may be" inadequate. *Id*.

Ms. Leigh believes she satisfies all factors for her intervention of right and she respectfully requests she be allowed to intervene in all aspects of the case.

## *PERMISSIVE INTERVENTION*

Should the court deny Ms. Leigh's right of intervention to part or all of the case, in that event Ms. Leigh respectfully asks, alternatively, she be given permission to intervene in all aspects of the case.

A court may grant permissive intervention where the applicant for intervention shows (1) it shares a common question of law or fact with the main action, (2) its motion is timely and (3) the court has an independent basis for jurisdiction over the applicant's claims. *Donnelly*, 159 F. 3d at 412; *San Jose Mercury News, Inc. v. U.S. Dist. Court - Northern Dist. (San Jose)*, 187 F.3d 1096 (9th Cir. 1999).

### *First Factor*

The parties share common questions (but not common beliefs) in this case relative

Cowan Law Office
10775 Double R Blvd
Reno, NV 89521
© G.M. Cowan 2014
All Rights Reserved
www.cowanlaw.com

1    to defining "excess horses," determining AML and in determining HMA boundaries, as

2    is discussed above.

3        *Second Factor*

4        Timing should not be an issue where the earliest of pleading stages has just begun

5    and no response by the government defendants is due or is filed.

6        *Third Factor*

7        Ms. Leigh's defense in intervention provides federal question jurisdiction under 28

8    U.S.C. § 1331 where agency action is challenged under the Wild Horse Act and the

9    Administrative Procedures Act.

10       Also, in suits involving the BLM, Ms. Leigh maintains a legal right to seek judicial

11   review of agency action (or lack of action) under the Administrative Procedure Act,

12   which allows a party "suffering legal wrong because of agency action, or adversely

13   affected or aggrieved by agency action" to seek judicial review.  5 U.S.C. § 702. She

14   pursues this very course in the Owyhee 2013 suit although her position there becomes

15   tenuous with the filing and possible success of the NACO suit, should she not be given

16   opportunity to defend against NACO's claims.

17       Also, in the circumstance where Ms. Leigh is denied opportunity to defend against

18   the NACO suit to protect against precedence that adversely affects her interests  raised

19   in her Owyhee 2013 suit, Ms. Leigh finds herself, potentially without remedy and without

20   due process to protect her interests through the courts.

21                      **FURTHER CONSIDERATIONS**

22       A plethora of additional reasons confirms that Ms. Leigh's right to intervention is

23   paramount and should be allowed as is demonstrated or supported further by the

24   following:

25   1.  **Exhibit 1:** Ms. Leigh's proposed Answer;

26   2.  **Exhibit 2:** Ms. Leigh's declaration;

27   3.  **Exhibit 3:** Declaration of Gordon Cowan;

28   4.  **Exhibit 4:** Copy of Appropriations Bill referenced herein, pp. 13-14;

*Cowan Law Office*
*10775 Double R Blvd*
*Reno, NV 89521*
*© G.M. Cowan 2014*
*All Rights Reserved*
*www.cowanlaw.com*

5. **Exhibit 5:** Diamond Drought Report, referenced in Ms. Leigh's declaration;

6. **Exhibit 6:** Ms. Leigh includes a fact sheet entitled, *Ecological Impact of Federal Public Lands Livestock Grazing*, referenced in her declaration.

### CONCLUSION

Ms. Leigh meets all criteria for intervention as of right and she also demonstrates grounds for permissive intervention. Ms. Leigh asks that the court grant permissive intervention for any aspect of this case for which intervention as of right is not granted. For any portion of the case that the court finds that intervenor status could not be granted, Ms. Leigh seeks to participate as an *amicus*.

For these reasons, Ms. Leigh respectfully requests that the court grant her motion to intervene.

Respectfully, January 26, 2014

LAW OFFICE OF GORDON M. COWAN

*s/ G.M. Cowan*

Gordon M. Cowan Esq. (SBN 1781)
Attorney for LAURA LEIGH,
Intervenor Defendant Applicant

### CERTIFICATE OF SERVICE
**[Pursuant to Fed. R. Civ. P.  5(b) & Local Rules for Electronic Filing]**

I certify, on the date indicated below, I filed the foregoing document(s) with the Clerk of the Court using the CM/ECF system, which would provide notification and a copy of same to counsel of record.

Dated: January 26, 2014

*s/ G.M. Cowan*

Gordon M. Cowan

Cowan Law Office
10775 Double R Blvd
Reno, NV 89521
© G.M. Cowan 2014
All Rights Reserved
www.cowanlaw.com

Page 19