1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                                **DISTRICT OF NEVADA**

8

9   NEVADA ASSOCIATION OF COUNTIES, )                3:13-cv-00712-MMD-WGC
    et al.,                                          )
10                                                   )                    **ORDER**
                    Plaintiff,                       )
11                                                   )
                    vs.                              )
12                                                   )
    UNITED STATES DEPARTMENT                         )
13  OF THE INTERIOR, et al.,                         )
                                                     )
14                  Defendants.                      )
    _____ )
15

16          Before the court are motions to intervene filed by Laura Leigh (Doc. # 6)[1] and American

17  Wild Horse Preservation Campaign (AWHPC), Terri Farley (Farley) and Mark Terrell (Terrell)

18  (Doc. # 10).[2] Plaintiffs Nevada Association of Counties and Nevada Farm Bureau Federation filed a

19  response. (Doc. # 20.)[3] AWHPC, Farley and Terrell filed a reply. (Doc. # 22.)[4]

20  / / /

21

    _____

22          [1] Refers to court's docket number. Ms. Leigh's motion is accompanied by the following: Doc. # 6-1 ([Proposed]
    Answer); Doc. # 6-2 (Leigh Decl.); Doc. # 6-3 (Cowan Decl.); Doc. # 6-4 (copy of Appropriations Bill referenced in brief);
23  Doc. # 6-5 (Diamond Drought Report referenced in the Leigh Decl.); Doc. # 6-6 (fact sheet referenced in the Leigh Decl.:
    *Ecological Impact of Federal Public Lands Livestock Grazing*). In addition, Ms. Leigh filed two supplements to her
    declaration at Docs. # 7, # 21.
24          [2] The motion of AWHPC, Farley and Terrell includes the following: Doc. # 10-1 (Points & Auth.); Doc. # 10-2 (Roy
    Decl. (Suzanne Roy is the Campaign Director for AWHPC)); Doc. # 10-3 (Farley Decl.); Doc. # 10-4 (Terrell Decl.); Doc.
25  # 10-5 ([Proposed] Answer); Doc. # 17 (Am. Farley Decl.).
            [3] Plaintiffs state that they take no position on these motions; however, they then state that if the court is inclined to
26  grant the motions, it should consider whether only one of the motions should be granted because the interests advanced by
    the movants are substantially similar such that the movant not granted intervention's interests would be adequately represented
27  by the movant granted intervention. The court will address this argument, *infra*.
            [4] AWHPC represents that the federal defendants take no position as to the motions to intervene; however, the federal
28  defendants have not filed any document indicating whether they take a position or not. (Doc. # 22 at 2.) Since a notice of
    appearance has been entered, AWHPC's representation is presumably accurate as the federal defendants could have filed a
    responsive brief if they deemed it appropriate.

# I. BACKGROUND

On December 30, 2013, Plaintiffs filed their complaint for declaratory judgment, injunctive and other relief under the Wild-Free Roaming Wild Horse and Burrow Act of 1971, 16 U.S.C. §§ 1331, *et. seq.* (Wild Horse Act), the Administrative Procedure Act, 5 U.S.C. §§ 551, *et. seq.* (the APA), the Due Process Clause of the United States Constitution and other federal statutes and regulations related to the management of wild horses and burros in Nevada. (Doc. # 1.) The named defendants include the United States Department of the Interior (DOI); the Honorable Sally Jewell (Secretary of the Interior); The Bureau of Land Management (BLM); Neil Kornze (Deputy Director, BLM); Edwin Roberson (Assistant Director, Renewable Resources and Planning, BLM); Amy Leuders (State Director, Nevada State Office, BLM); and Does 1-50. (*Id.*)

Plaintiffs allege that federal defendants' failure to follow the law with respect to the management of wild horses and burros in Nevada has resulted in harm to the animals, damage to rangelands in Nevada, and a variety of adverse economic and environmental impacts. (*Id.*) Plaintiffs seek, among other things, an injunction requiring the federal defendants to conduct gathers of excess animals on public lands managed by DOI and BLM in Nevada which exceed current guidelines; determine (at least every two months) the current population of animals in Nevada and promptly conduct gathers of excess animals; cease long-term warehousing of animals removed from excess populations and instead promptly proceed to auction, sell or otherwise properly dispose of animals; adhere to multiple use principles in carrying out their responsibilities; and cease interference with Nevada water rights owned by third parties. (*Id.*)

On January 14, 2014, the federal defendants filed a notice of appearance. (Doc. # 5.)

On January 26, 2014, Laura Leigh filed her motion to intervene. (Doc. # 6.) On February 27, 2014, AWHPC, Farley and Terrell filed their motion to intervene. (Doc. # 10.) The court will now address whether the movants should be allowed to intervene in this action.

# II. LEGAL STANDARD

Federal Rule of Civil Procedure 24 governs intervention and provides for intervention as a matter of right (Fed. R. Civ. P. 24(a)) and permissive intervention (Fed. R. Civ. P. 24(b)).

Intervention as a matter of right must be granted if on timely motion, the proposed intervenor

can establish that the right to intervene is provided unconditionally by federal statute or "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a).

In the Ninth Circuit, an applicant seeking to intervene as a matter of right must demonstrate: (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2012) (citations and quotation marks omitted); *see also Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011).

Permissive intervention also requires a timely motion, and *may* be granted to an applicant who has a "conditional right to intervene by a federal statute" or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). In deciding whether to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Regardless of whether the applicant seeks to intervene as a matter of right or permissively, the Ninth Circuit has established a liberal policy favoring intervention. *Wilderness Soc.*, 630 F.3d at 1179. This allows for "both efficient resolution of issues and broadened access to the courts." *Id.* (citation and quotation marks omitted).

### III. DISCUSSION

Both movants seek to intervene as a matter of right, and alternatively, request permissive intervention. The court will first address whether they are entitled to intervene as a matter of right, and then will turn to the question of permissive intervention as an alternative request.

### A. INTERVENTION AS A MATTER OF RIGHT

#### 1. Timeliness

Timeliness is "'the threshold requirement' for intervention as of right." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (quoting *United States v. Or*, 913

1  F.2d 576, 588 (9th Cir. 1990)). In determining whether a motion to intervene is timely, a court

2  should consider: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the

3  prejudice to other parties; and (3) the reason for and length of [any] delay." *Id*. (quotation marks

4  omitted).

5      These motions are undeniably timely. Ms. Leigh's was filed within a month of the filing of

6  the complaint and that of AWHPC, Farley and Terrell was filed within approximately two months of

7  the filing of the complaint. Moreover, the federal defendants have yet to file a responsive pleading.

8  Therefore, this factor weighs in favor of granting both motions to intervene as a matter of right.

9      **2. Is there a Significant Protectable Interest?**

10      The applicant seeking to intervene as a matter of right must show that the "interest is

11  protectable under some law and that there is a relationship between the legally protected interest and

12  the claims at issue." *Wilderness Soc.*, 630 F.3d at 1179 (citation and quotation marks omitted). This

13  can be demonstrated if the applicant "will suffer a practical impairment of its interest as a result of

14  the pending action." *Id*. (citation and quotation marks omitted). "[N]o specific legal or equitable

15  interest need be established." *Citizens for Balanced Use*, 647 F.3d at 897 (citations and quotation

16  marks omitted).

17      Ms. Leigh contends she has a significant protectable interest. She claims to have attended

18  more BLM roundups than any DOI or BLM employee, and has spent most of her time on the ranges

19  in Nevada. (Doc. # 6 at 6; Doc. # 6-2 at 1 ¶ 3.) She is an illustrator, journalist, videographer and

20  reporter on issues dealing with the American West, a horse owner and keeper, has treated and cared

21  for horses and operated a home-based nursery for wildlife rehabilitation. (Doc. # 6 at 6-7.) She also

22  conducts research related to wild horse topics, arranges for adoptions of wild horses captured by

23  BLM from public lands, and publishes articles on the management of wild horses on public lands.

24  (*Id*. at 7.)

25      She maintains that she has a legally protected right to enjoy public lands for their aesthetic

26  values, which includes the ability to enjoy seeing wild horses roam free on those lands, as well as an

27  interest in photographing and studying wild horses for educational and documentary purposes. (*Id*.)

28

4

1  She claims her interests are implicit in both the Wild Horse Act and the Federal Land Policy

2  Management Act, 43 U.S.C. §§ 1701, *et. seq.* (FLPMA).

3       In addition, Ms. Leigh is currently maintaining an action (the Owyhee 2013 Action) in this

4  district where she is challenging BLM's determination of "excess horses" and herd management area

5  (HMA) boundaries within a certain location. (*Id.* at 10, *Leigh v. Jewell*, Case No. 3:13-cv-0006-

6  MMD-VPC). She argues that because the Plaintiffs here ask for relief including that the court

7  continuously monitor the removal of wild horses, this action implicates her interests in the Owyhee

8  2013 Action. (*Id.*)

9       AWHPC, Farley and Terrell also argue that they have a significant protectable interest in the

10  wild horses that are the subject of this action. (Doc. # 10-1 at 6.) They contend that the preservation

11  of species, aesthetic enjoyment of the environment, use of public lands, participation in the

12  administrative or public process, and economic interests have all been deemed sufficient to satisfy

13  this requirement. (*Id.* at 6-7.) Specifically, they contend they have interests in this matter because

14  they wish to protect the wild horses and burros in Nevada and throughout the West. (*Id.* at 7-8.)

15       AWHPC's members enjoy photographing, studying, and viewing wild horses and burros as

16  they roam throughout the West. (*Id.*) AWHPC engages in advocacy efforts to protect these animals

17  by participating in administrative processes, initiating litigation, and intervening in actions that seek

18  the wholesale removal of wild horses from public lands. (*Id.*, citing *Rock Springs Grazing Assoc. v.*

19  *Salazar*, Case No. 2:11-CV_00263 (D. Wy. Nov. 2, 2011).)

20       Ms. Farley claims to have dedicated her life to following, writing about, and advocating for

21  the wild horses of Nevada. (*Id.*; Doc. # 10-3 at 2-3 ¶¶ 2-6.) Her livelihood depends on observing,

22  documenting and writing about Nevada's wild horses. (Doc. # 10-1 at 7-8; Doc. # 10-3 at 4 ¶ 11) She

23  also derives aesthetic enjoyment from observing these animals. (Doc. # 10-1 at 8-9; Doc. # 10-3 at

24  3-4 ¶¶ 7-10.)

25       Mr. Terrell likewise proclaims economic and aesthetic interests in Nevada's wild horses.

26  (Doc. # 10-1 at 9; Doc. # 10-4.) He owns a business, Wild Horses of Nevada Photography, and takes

27  and sells photographs of wild horses. (Doc. # 10-1 at 9; Doc. # 10-4 at 2 ¶¶ 1-3.) He also provides

28  photography tours for tourists who want to experience Nevada's wild horses. (Doc. # 10-1 at 9; Doc.

# 10-4 at 2-3 ¶ 4.) His business depends on the presence of wild horses in Nevada. (Doc. # 10-4 at 3 ¶ 6.) Like Ms. Farley, he derives aesthetic enjoyment as well from his profession. (Doc. # 10-1 at 9; Doc. # 10-4 at 3 ¶ 7.)

The Ninth Circuit has found that there is a significant protectable interest in conserving and enjoying the wild and preserving species and their habits. *See Citizens for Balanced Use*, 647 F.3d at 897-98 (finding wilderness conservation groups had significant protectable interest in conserving and enjoying the wilderness); *United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008) (environmental groups found to have protectable interest in using and preserving public lands); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (intervention proper where intervenor sought to preserve birds and habitats); *see also San Juan County v. United States*, 503 F.3d 1163, 1199 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562-63 (1992)) ("[T]he desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing.")).

Here, the movants both assert a significant protectable interest in the management and preservation of these wild animals under the Wild Horse Act and other federal laws and regulations. The Plaintiffs in this action contend that the federal defendants have failed to properly manage the wild horses and burros under the Wild Horse Act. The movants claim that the Plaintiffs claims for relief would directly contradict the spirit, purpose and provisions of the Wild Horse Act and other applicable federal laws and regulations. Therefore, there is a sufficient relationship between the movants' legally protected interest and the claims at issue in this action.

The movants here undoubtedly have a significant protectable interest in preserving these animals in their natural habitat, of enjoying them aesthetically as such, and these interests are sufficiently related to the claims asserted in this action. Therefore, this factor weighs in favor of granting intervention as a matter of right.

### 3. Will the Disposition Impede the Applicant's Ability to Protect Its Interest?

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene..." Fed. R. Civ. P. 24 advisory committee's note to 1966 Amendment.

1       Ms. Leigh argues that this lawsuit will impair or impede her interests. (Doc. # 6 at 12-15.)

2   She claims she would be detrimentally affected by a determination in Plaintiffs' favor in this action,

3   and would suffer irreparable harm if the wild horses were removed from public lands against the

4   policy of the Wild Horse Act because wild horses and burros and their existence on the range is

5   central to her core. (*Id*. at 12-13; Doc. # 6-2 at 1 ¶ 4.) If this were to occur, she would no longer be

6   able to observe and report to the public about the wild horses on the range. (Doc. # 6 at 13; Doc.

7   # 6-2 at 1 ¶ 4.) Moreover, if this suit is resolved in favor of Plaintiffs, she contends it would interfere

8   with her Owyhee 2013 Action. (Doc. # 6 at 14.)

9       AWHPC, Farley and Terrell likewise argue that disposition of this case may impair their

10  ability to protect their interests. (Doc.  10-1 at 9-10.) If the relief requested by Plaintiffs is granted,

11  they contend it will have an adverse effect on their interest in preserving wild horses in Nevada for

12  their aesthetic, recreational, educational, photographic and economic purposes because the result of

13  the requested relief would be the demolition of entire herds of wild horses in Nevada, which would

14  destroy the experience of studying and viewing wild horses on the range. (Doc. # 10-1 at 9-10; Doc.

15  # 10-3 at 4 ¶12; Doc. # 10-4 at 3-4 ¶ 9.)

16      If Plaintiffs succeed in this action in obtaining an injunction requiring, among other things,

17  the immediate gathers of "excess" animals, the cessation of storage of animals and the sale, auction

18  or other "disposal" of these animals, these intervenors' interests would undoubtedly be impaired. The

19  proposed intervenors both advocate that this would have the practical result of greatly reducing or

20  decimating the wild horse population in Nevada. Assuming this is the case, Ms. Leigh would be

21  deprived of the opportunity to view these animals in the wild and of continuing her research and

22  writing concerning these animals. AWHPC and its members would likewise be deprived of the

23  opportunity to view these animals in their natural state, of educating the public about these animals,

24  of photographing them and writing about them. Ms. Farley would similarly be denied the opportunity

25  of continuing to observe and write about these animals, on which she makes her livelihood. Finally,

26  Mr. Terrell would not be able to continue his wild horse photography business and would be

27  deprived of the aesthetic enjoyment of the wild horses.

28      Therefore, this factor weighs in favor of granting intervention as a matter of right.

**4. Are the Movants' Interests Adequately Represented by Existing Parties?**

The Ninth Circuit evaluates the adequacy of representation by existing parties by examining three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). "The 'most important factor' in assessing the adequacy of representation is 'how the [applicant's] interest compares with the interests of existing parties.'" *Citizens for Balance Use*, 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086)). However, where "an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises." *Id*. (citation omitted). This presumption of adequacy applies when the government is acting on behalf of a constituent and it must be rebutted with a "compelling showing" of inadequacy. *Id*.

Finally, the movants need not show with absolute certainty that an existing party will not adequately represent their interest. *Citizens for Balanced Use*, 647 F.3d at 900. It is enough to show that the existing parties *may* not adequately represent their interests. *Id*.

Ms. Leigh contends that no party to this suit adequately represents her interests. (*Id*. at 15.) Plaintiffs' position is antithetical to her position that the horses should be managed so that they remain as viable herds on public lands, and Plaintiffs would not protect her right of access to observe and report activity involving these animals on public lands. (*Id*.) She likewise claims that the federal defendants do not adequately represent her interests as she maintains that they continue to rely on flawed or outdated data in carrying out their responsibilities, and she is currently engaged in litigation against them in the Owyhee 2013 Action. (*Id*.) She argues that she is at odds with these defendants concerning the management of Nevada's wild horse population on public lands. (*Id*.)

AWHPC, Farley and Terrell also maintain that no party to this case adequately represents their interests. (Doc. # 10-1 at 10-11.) They claim that their interests in preserving and protecting the wild horse population in Nevada are not represented by either the Plaintiffs or federal defendants. (*Id*.) They assert the Plaintiffs' requested relief is directly adverse to their interests, and the federal defendants interests are narrower than and in some instances conflict with those of the proposed

1  intervenors. (*Id*. at 11-12.) In addition, they argue that BLM in the past has shown a propensity to

2  settle these lawsuits in ways that do not protect the wild horses. (*Id*. at 12.) Finally, Ms. Farley and

3  Mr. Terrell contend that they have private economic and professional interests which will not be

4  represented by any party to this action. (*Id*. at 13.)

5        Plaintiffs have filed a responsive brief stating that they take no position on either motion to

6  intervene filed in this action. (Doc. # 20 at 2.) Then, Plaintiffs state that if the court is inclined to

7  grant intervenor status to either or both of the movants, it should consider whether granting

8  intervention to both implicates the policy expressed in Rule 24 regarding whether existing parties

9  would then adequately represent the interests of the remaining proposed intervenor. (*Id*. at 2-3.)

10       In response, AWHPC, Farley and Terrell argue that while their interests in this action are

11  similar to Ms. Leigh's interests, they are "not entirely co-extensive." (Doc. # 22 at 2.) Ms. Leigh's

12  supplemental declaration likewise states that she does not believe AWHPC will adequately represent

13  *her* interests in this proceeding. (Doc. # 21-1.) AWHPC also represents that should the court grant

14  intervention to both movants, it will make every effort to coordinate with Ms. Leigh to minimize and

15  avoid any duplicative arguments. (*Id*.)

16       First, the court agrees that intervention should not be limited to one or the other of the

17  movants. While the parties acknowledge some overlap in the aesthetic, economic, photographic, and

18  journalistic interests advanced, each of the persons or organizations seeking to intervene has

19  adequately described their own unique interests that would not be adequately represented by the

20  other.

21       Ms. Leigh describes her deep personal involvement with the wild horses on Nevada's public

22  lands. (Doc. # 6-2; Doc. # 21-1.) As stated above, she claims to have attended more roundups than

23  any other observer. (Doc. # 6-2 at 1 ¶ 3.) She has traveled to and documented ranges throughout

24  Nevada and has provided specific data when the removal of wild horses is contemplated. (*Id*. ¶ 6.)

25  She has also made observations and conducted extensive research on the impacts and costs of

26  livestock grazing on public land, which she will presumably use to refute Plaintiffs' claims. (*Id*. at 2

27  ¶ 7.) She also professes involvement in public awareness of issues surrounding the destruction,

28  killing or sale for slaughter of wild horses. (*Id*. at 3 ¶ 8.)

9

AWHPC represents the unique interests of its base of 100,000 supporters and coalition partners which are diverse in terms of geography and subject matter, *i.e.*, environmental, humane, historical, professional, recreational, aesthetic, and journalistic) and maintains these interests cannot be adequately represented by one individual, Ms. Leigh. (Doc. # 10-2 at 4-5 ¶ 10.)

Ms. Farley contends that while Ms. Leigh is a passionate advocate for wild horses, she does not adequately represent Ms. Farley's broader interests, including economic, aesthetic, journalistic, and educational concerns. (Doc. # 10-3 at 5 ¶ 15.) Mr. Terrell similarly argues that Ms. Leigh cannot adequately represent his broader economic, aesthetic, photographic and educational concerns. (Doc. # 10-4 at 5 ¶ 13.)

Because the interests of the movants *may* not be adequately represented by the other, the court does not find this factor to be fatal to either of the movants' request to intervene. This is consistent with Ninth Circuit law that it is sufficient to show the existing parties *may* not adequately represent the interests of the proposed intervenor, *Citizens for Balanced Use*, 647 F.3d at 900, and the liberal policy favoring intervention, *Wilderness Soc.*, 630 F.3d at 1179.

Second, the court also agrees with the movants that their interests are not adequately represented by either the Plaintiffs or the federal defendants. The positions of the movants and those of the Plaintiffs appear to be diametrically opposed. The Plaintiffs request, among other things, relief which would result in the prompt removal of wild horses from public lands in Nevada, and according to the movants would greatly reduce, if not decimate, the wild horse population from Nevada's public lands. The movants, on the other hand, are interested in preserving and protecting the wild horse habitats on Nevada's public lands. Therefore, the Plaintiffs cannot be said to adequately represent the movants' interests.

Nor can the federal defendants be said to adequately represent the movants' interests. While there might be *some* eventual overlap between their positions, the federal defendants cannot be said to adequately represent the personal professional and educational interests asserted by the movants. Nor can the federal defendants be said to adequately represent the economic, aesthetic and environmental interests asserted by the movants.

While the government is presumed to represent the interests of its citizens, the movants have

adequately rebutted this presumption. According to AWHPC, BLM is responsible for balancing the interests of private livestock grazing and wild horses on public lands, but in its opinion, favors the interests of cattle grazing. (Doc. # 10-2 at 4 ¶ 9; Doc. # 10-3 at 5 ¶ 14; Doc. # 10-4 at 4-5 ¶ 12.) AWHPC, on the other hand, is interested in protecting and preserving the wild horses and burros on public lands. (Doc. # 10-2 ¶ 8.)

Since the federal defendants would be responsible for balancing both public and private interests, it is a reasonable assumption that the federal defendants' interests may diverge from those of the movants. In addition, the movants point out that in similar cases the federal defendants have entered into settlement agreements which acquiesce to some of the demands asserted by the Plaintiffs, and their interests in entering into these settlements are very distinct from those coveted by the movants. The movants have made it clear that they would not acquiesce to the demands for relief made by the Plaintiffs in this action. Therefore, the movants have made a compelling showing that the federal defendants would not adequately represent their interests in this matter.

In sum, this final factor weighs in favor of granting intervention to the movants as a matter of right.

**5. Conclusion**

The movants have shown that their motions were timely, that they have a significant protectable interest in this action, that the disposition of the action may impair their ability to protect their interests, and that the existing parties may not adequately represent their interests. As such, the movants are entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a).

**B. PERMISSIVE INTERVENTION**

The movants alternatively request that they be allowed to intervene permissively.

Ms. Leigh contends the parties share common questions relative to the definition of "excess horses," in determining HMA boundaries, and the court exercises federal question jurisdiction over the suit which is brought pursuant to the Wild Horse Act and the APA. (Doc. # 6 at 17-18.)

AWHPC, Farley and Terrell similarly contend that their motion is timely, federal question jurisdiction exists, and the claims of defenses of the parties and proposed intervenors concern common questions of law and fact. (Doc. # 10-1 at 14-15.)

1    While the court has already concluded that the movants are entitled to intervene as a matter

2  of right, they are, alternatively, entitled to intervene permissively. The movants unquestionably have

3  claims or defenses that share a common question of law or fact with the main action, and there is no

4  evidence that their intervention will result in an undue delay in this action or will prejudice the

5  adjudication of the existing parties' rights. Moreover, the court has federal question subject matter of

6  the action even with the addition of the intervenors. Accordingly, the movants are likewise entitled to

7  intervene permissively under Federal Rule of Civil Procedure 24(b).

8                                    **IV. CONCLUSION**

9    The motions to intervene of Ms. Leigh (Doc. # 6) and AWHPC, Farley and Terrell (Doc.

10  # 10) are **GRANTED**. The movants are entitled to intervene as a matter of right, and alternatively,

11  may intervene in this action permissively.

12    **IT IS SO ORDERED**.

13    DATED:  April 2, 2014.

14

15                                                  _William G. Cobb_

16                                                  _____
                                                    WILLIAM G. COBB
                                                    UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

                                                    12