UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NEVADA ASSOCIATION OF COUNTIES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>Defendants. | Case No. 3:13-cv-00712-MMD-WGC<br><br>ORDER<br><br>(Def.-Intervenors' Motion to Dismiss – dkt. no. 38; Defs.' Motion to Dismiss – dkt. no. 43; Def.-Intervenor's Motion to Dismiss – dkt. no. 56) |

**I.   SUMMARY**

Before the Court is a Motion to Dismiss (dkt. no. 43) filed by Defendants United States Department of the Interior, Sally Jewell, the Bureau of Land Management ("BLM"), Neil Kornze, Edwin Roberson, and Amy Leuders (collectively, "Federal Defendants"). Also before the Court are Motions to Dismiss filed by Defendant-Intervenors American Wild Horse Preservation Campaign, Terri Farley, and Mark Terrell (collectively, the "Campaign") (dkt. no. 38) and Defendant-Intervenor Laura Leigh (dkt. no. 56). The Court has reviewed Plaintiffs Nevada Association of Counties, Nevada Farm Bureau Federation, Nevada Bighorns Unlimited, and Crawford Cattle's opposition brief (dkt. no. 59) and Federal Defendants' and the Campaign's replies (dkt. nos. 60, 62).[1] Because the Court grants the Campaign's Motion to Dismiss (dkt. no. 38), Federal Defendants' and Leigh's Motions are denied as moot.[2]

---

[1] Defendant-Intervenor Leigh did not file a reply.

[2] The motions to dismiss raise nearly identical arguments. The Campaign filed non-oppositions to both Federal Defendants' and Leigh's Motions. (Dkt. nos. 52, 58.)

## II. BACKGROUND

Plaintiffs represent Nevada's counties; farmers and ranchers; and hunters, outdoorsmen, and conservationists. (Dkt. no. 53 ¶¶ 9-12.) They allege that Federal Defendants have failed to manage Nevada's wild horses and burros in compliance with the Wild Free-Roaming Horses and Burros Act ("Wild Horse Act"), 16 U.S.C. §§ 1331-1340, adversely affecting the state's natural resources, economic vitality, public safety, public services, and wild horse and burro populations. (*See* dkt. no. 53 ¶¶ 60-72.)

Almost half of the United States' wild horse and burro population is in Nevada. (*Id.* ¶ 44.) The state's wild horse and burro population grows quickly — without intervention, herd sizes will grow by about 20% annually. (*Id.* ¶ 59.) Plaintiffs allege that such unchecked herd growth strains Nevada's natural and economic resources because horses and burros aggressively compete with livestock and other wildlife for water and forage. (*Id.* ¶¶ 64, 67-68.) Horses and burros may also impair public safety by causing traffic accidents. (*Id.* ¶¶ 65-66.)

Plaintiffs initiated this action in December 2013, alleging that Federal Defendants have improperly managed Nevada's wild horses and burros in violation of the Wild Horse Act and Plaintiffs' Fifth Amendment right to due process, and seeking judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. (Dkt. no. 1 at 42-48.) Plaintiffs sought declarative and injunctive relief. (*Id.* at 48-50.) Plaintiffs filed a First Amended Complaint ("FAC") as a matter of course in June 2014 (*see* dkt. nos. 42, 51, 53), after the Campaign filed its Motion to Dismiss (dkt. no. 38).[3] The FAC similarly seeks declarative and injunctive relief in light of Federal Defendants' alleged APA and constitutional violations. (Dkt. no. 53 at 49-57.)

Federal Defendants and Defendant-Intervenors (together, "Defendants") contend that the FAC must be dismissed because Plaintiffs have failed to identify a final agency

---

[3]The Campaign renewed its Motion to Dismiss in June 2014. (Dkt. no. 44.) For clarity, the Court will refer to the Campaign's renewed Motion to Dismiss (dkt. no. 44-2) and Plaintiffs' latest-filed FAC (dkt. no. 53).

action that is subject to judicial review. Defendant-Intervenors seek dismissal under Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject matter jurisdiction in the absence of an agency action to review (dkt. no. 44-2 at 14-15; dkt. no. 56 at 15-16); Federal Defendants rely on Rule 12(b)(6) in contending that Plaintiffs' claims are not justiciable because they amount to a programmatic challenge to Federal Defendants' implementation of the Wild Horse Act in Nevada.[4] (Dkt. no. 43 at 11-17.)

### III.   LEGAL STANDARD

The Wild Horse Act tasks the Secretary of the Interior ("Secretary") with "protect[ing] and manag[ing] wild free-roaming horses and burros as components of the public lands," among other duties. 16 U.S.C. § 1333(a). The Act does not, however, create a private right of action for claims challenging agency compliance with the statute. *See In Def. of Animals v. U.S. Dep't of Interior*, 751 F.3d 1054, 1061 (9th Cir. 2014) (the Act does not "contain an internal standard of judicial review").

The APA provides for judicial review of agency actions. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990); *see* 5 U.S.C. §§ 702, 704. Under the APA, an agency action "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent denial thereof, or failure to act." 5 U.S.C. § 551(13); *see Lujan*, 497 U.S. at 882. Plaintiffs thus bring their claims under the APA, seeking to "compel agency action unlawfully withheld or unreasonably delayed" under § 706(1), and to set aside an agency action pursuant to § 706(2). (Dkt. no. 53 ¶ 77.) "When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency

///

---

[4]In arguing that the FAC raises a non-justiciable programmatic challenge, Federal Defendants assert that Plaintiffs fail to allege any agency action — let alone a final agency action — that would permit judicial review under the APA. (Dkt. no. 43 at 12.) The Court construes this argument as jurisdictional. *See Ore. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) ("'[F]inality is . . . a jurisdictional requirement'" (quoting *Ukiah Valley Med. Ctr. v. F.T.C.*, 911 F.2d 261, 264 n.1 (9th Cir. 1990))). The Court will review the agency action and programmatic challenge issues under Rule 12(b)(1).

action.'" *Lujan*, 497 U.S. at 882 (citing 5 U.S.C. § 704); *see Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006). Final agency action is a jurisdictional prerequisite to judicial review. *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008).

## IV.   DISCUSSION

Plaintiffs' claims challenge the Secretary's management of wild horses and burros under the Wild Horse Act. To facilitate the protection and management of wild horses and burros, the Act requires the Secretary to "maintain a current inventory of wild free-roaming horses and burros on given areas of the public lands." 16 U.S.C. § 1333(b)(1). The inventory is designed to assist the Secretary in determining whether those lands are overpopulated, in creating Appropriate Management Levels ("AMLs") for those lands, and in deciding whether wild horses and burros should be removed from overpopulated areas, or whether other actions should be taken to achieve the AMLs. *Id.* The Act also lays out a process the Secretary must follow to "immediately remove excess animals" from public lands. 16 U.S.C. § 1333(b)(2). The Secretary may take those actions only where she determines "that an overpopulation exists on a given area of the public lands and that action is necessary to remove excess animals." *Id.* Plaintiffs contend that Federal Defendants have not complied with the Act's requirements, violating the APA and Plaintiffs' right to due process. The Court addresses each argument in turn.

### A.   APA

Plaintiffs insist that the FAC identifies final agency actions — or actions that Federal Defendants withheld — that the Court may review or compel under the APA. (*See* dkt. no. 59 at 12-20.) The Court disagrees. As alleged, the FAC fails to identify any final agency action that warrants judicial review, or any inaction that may be compelled; rather, Plaintiffs ask the Court to ensure that Federal Defendants' management of wild horses and burros in Nevada complies with the Wild Horse Act. The Court lacks jurisdiction to oversee such a sweeping request.

///

In *Lujan*, 497 U.S. at 890-94, 898-900, the Supreme Court made clear that an agency action is a necessary element of an APA claim under § 706(2). The Court held that the plaintiffs failed to establish a justiciable challenge to a federally administered land management program under APA § 706(2). *Lujan*, 497 U.S. at 879-80, 900. The Court reasoned, in part,[5] that despite the plaintiffs' allegation that the program's administration had rampantly violated applicable laws, the plaintiffs failed to identify a single agency action for review. *Id.* at 890-94. Rather, the plaintiffs sought review of "flaws in the entire program — consisting principally of the many individual actions referenced in the complaint." *Id.* at 893 (internal quotation marks omitted). The Court refused to carry out "wholesale correction [of the program] under the APA." *Id.* The Court reiterated this reasoning in *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004), noting that the *Lujan* plaintiffs "would have fared no better if they had characterized" their claims as failures to take agency action under § 706(1). Under this provision, courts may compel only "*discrete* agency action that [the agency] is *required to take*," which would foreclose the *Lujan* plaintiffs' programmatic challenge. *Id.* at 64.

Here, Plaintiffs argue that the FAC does not create a programmatic challenge to Federal Defendants' wild horse and burro management, but rather "alleges specific, discrete mandates" that Federal Defendants have failed to carry out. (Dkt. no. 59 at 15.) According to Plaintiffs, those mandates include:

> (1) [K]eeping a meaningful current inventory as the statute requires; (2) making explicit determinations of excess populations that the statute demands; (3) taking the immediate actions to reduce excess populations inthe proper order and using the proper methods which the statute expressly states must be used; (4) promptly removing horses from private property on request; (5) consulting with the parties the statute demands be consulted with; and (6) actively and properly considering all relevant factors in making determinations.

///

---

[5] The Court, however, concluded that two members of the plaintiff organization had identified agency actions in their affidavits, which referenced specific BLM orders that changed how two tracts of federal public lands were classified. *Lujan*, 497 U.S. at 885-86. The Court nevertheless determined that those members lacked standing. *Id.* at 889. The FAC, in contrast, fails to identify any agency action with similar specificity.

5

(*Id.*) Plaintiffs additionally contend that the FAC identifies agency actions that Federal Defendants took arbitrarily and capriciously, including setting AMLs, housing gathered horses and burros in long-term facilities, keeping inventories in an improper manner, inadequately responding to requests to remove animals from private property, and refusing to conduct gathers at the request of private parties. (*Id.* at 20.) The FAC undermines Plaintiffs' post-hoc attempts to identify discrete agency actions.

With regard to agency action unlawfully withheld, Plaintiffs' opposition brief suggests that the FAC outlines "conduct indicative of a pattern and practice that defendants will continue to do in the future." (*Id.* at 16.) But rather than identify discrete agency actions to challenge, the FAC cites general examples to illustrate the need for broad judicial oversight. (*See* dkt. no. 53 ¶ 91.) Plaintiffs allege that Federal Defendants never properly responded to concerns raised about the proliferation of wild horses and burros in the state. (*See id.* ¶¶ 7, 12(a)-(b), 53-56.) Plaintiffs also assert that, "[o]n occasion," Federal Defendants "refused to remove horses from private lands when requested to do so," citing a Ninth Circuit decision that addressed a landowner's specific requests to have horses removed from his property. (*Id.* ¶ 33 (citing *Fallini v. Hodel*, 783 F.2d 1343 (9th Cir. 1986)).) Plaintiffs go on to cite various publications that suggest that Federal Defendants' estimate of the national population of wild horses and burros is inaccurate, and that these populations exceed Federal Defendants' AMLs in Nevada. (*Id.* ¶¶ 35-38, 41-43, 73.) Based on these estimates and their own projections of population growth in Nevada, Plaintiffs assert that Federal Defendants have not taken mandatory steps to reduce Nevada's wild horse and burro population, even though other uses of federal public lands have been curtailed. (*Id.* ¶¶ 41, 46, 59-63.)

Rather than describe discrete agency actions that the Court may review, these examples support Plaintiffs' argument for program-wide changes to Federal Defendants' management of wild horses and burros. Indeed, Plaintiffs do not allege a single AML or inventory that Federal Defendants failed to set. Nor do they identify a particular instance where Federal Defendants determined that AMLs had been exceeded, but failed to

6

remove excess animals following that determination. The FAC is no different than the programmatic challenge at issue in *Lujan* — even though the FAC describes "many individual actions" involving Federal Defendants' oversight, these actions merely exemplify alleged "flaws in the entire program." *Lujan*, 497 U.S. at 893.

Plaintiffs' requested relief further supports the Court's finding that the FAC fails to identify discrete agency actions that were unlawfully withheld. Plaintiffs ask the Court to issue an injunction or writ of mandamus that would require Federal Defendants "to promptly and fully comply with all provisions of the Act," and to immediately gather excess horses and burros from public lands, to determine statewide population levels every two months, to sell or dispose of excess animals currently housed by Federal Defendants, and to stop interfering with Nevadans' water rights. (Dkt. no. 53 ¶¶ 94-95.) Plaintiffs essentially ask the Court to compel compliance with the Act and refashion Federal Defendants' management of wild horses and burros in Nevada. But Plaintiffs "cannot seek *wholesale* improvement of this program by court decree." *Lujan*, 497 U.S. at 891. Because Plaintiffs have not alleged that Federal Defendants withheld discrete agency action,[6] the Court cannot review this claim.

Plaintiffs' claims under § 706(2) are similarly flawed. The FAC alleges that Federal Defendants acted arbitrarily and capriciously in making decisions "based on political considerations and their own preferences," rather than following the Wild Horse Act and its regulations. (Dkt. no. 53 ¶ 79.) As alleged, Plaintiffs' § 706(2) claims challenge Federal Defendants' creation of animal inventories, their maintenance of a thriving natural balance" on public lands, their determinations of AMLs and excess populations, and their decisions to gather wild horses and burros. (*Id.* ¶ 80.) Just as with Plaintiffs' § 706(1) allegations, Plaintiffs point out examples of such allegedly arbitrary

///

---

[6]The Court need not decide whether Federal Defendants have discretion in carrying out their duties under the Wild Horse Act. Plaintiffs have failed to identify any unlawfully withheld agency action, much less a mandatory agency action. *See Norton*, 542 U.S. at 65-66.

and capricious activities, including: Federal Defendants' response to communications about wild horse and burro populations (*id.* ¶¶ 7, 12(a)-(b), 53-56); Federal Defendants' decision to reduce grazing access on certain lands (*id.* ¶¶ 12(a), 46); Federal Defendants' decision to hold gathered animals for an indefinite period rather than selling or destroying them (*id.* ¶¶ 30, 62); and Federal Defendants' issuance of population estimates and AMLs that are allegedly scientifically invalid (*id.* ¶¶ 35-38, 41). The FAC references these activities only to exemplify Federal Defendants' failure to comply with the Wild Horse Act. *See Lujan*, 497 U.S. at 892-93. This programmatic attack is further evidenced by Plaintiffs' request that the Court "declar[e] the duties and responsibilities of Defendants under the [Wild Horse Act] and applicable rules, regulations, and directives, the [APA], and other applicable statutes and regulations." (Dkt. no. 53 ¶ 93.) Without allegations that identify agency actions, the Court does not have subject matter jurisdiction over Plaintiffs' § 706(2) claim.

The Court will thus dismiss Plaintiffs' APA claims. The Court recognizes that it may be frustrating for Plaintiffs to identify final agency actions for review when they are concerned with Federal Defendants' allegedly "consistent, persistent, [and] significant" missteps under the Wild Horse Act. (Dkt. no. 59 at 16.) But "this is the traditional, and remains the normal, mode of operation of the courts." *Lujan*, 497 U.S. at 894.

### B. Due Process

Plaintiffs suggest that Federal Defendants violated their Fifth Amendment right to due process "in that Defendants failed to follow their own procedures contained in both the Act and in 43 CFR Part 4700." (Dkt. no. 53 ¶ 83.) Federal Defendants contend that this Due Process claim is not justiciable because Plaintiffs have failed to identify any agency action for judicial review. (Dkt. no. 62 at 7.) Additionally, all Defendants argue that Plaintiffs have not specified a property interest that was taken or otherwise affected by Federal Defendants' management of wild horses and burros. (Dkt. no. 56 at 25-27; dkt. no. 43 at 21-22; dkt. no. 44-2 at 31-32.) Plaintiffs insist that their claim should not be

///

dismissed because the FAC sufficiently alleges that Plaintiffs' due process rights were infringed by Federal Defendants' arbitrary and capricious actions. (Dkt. no. 59 at 9-11.)

Plaintiffs' arguments are unavailing. First, it is not clear that the Court has subject matter jurisdiction over this claim, given Plaintiffs' suggestion that their due process cause of action is intertwined with their APA causes of action. (*See* dkt. no. 59 at 10.) As discussed above, in the absence of an agency action, the Court cannot review Plaintiffs' APA claims. (*See supra* Part IV.A.) Second, the allegation is conclusory and subject to dismissal under Rule 12(b)(6). A pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Although Plaintiffs allege that they notified Federal Defendants that wild horses and burros were outside designated management areas and were interfering with water access (*see, e.g.*, dkt. no. 59 ¶ 12(a)), the FAC does not indicate how Federal Defendants' response to these communications fell short of due process. Accordingly, this claim is dismissed.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motions.

It is ordered that the Campaign's Motion to Dismiss (dkt. nos. 38, 44-2) is granted. Federal Defendants' Motion to Dismiss (dkt. no. 43) and Leigh's Motion to Dismiss (dkt. no. 56) are denied as moot. The FAC is dismissed with prejudice. The Clerk is ordered to enter judgment in favor of Federal Defendants and Defendant-Intervenors American Wild Horse Preservation Campaign, Terri Farley, Mark Terrell, and Laura Leigh.

DATED THIS 12th day of March 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE